# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF NEW MEXICO

UNITED STATES OF AMERICA,

    Plaintiff,

                                                                     No. 1:20-cr-01691-WJ

    v.

PAUL LUJAN,

    Defendant,

## MEMORANDUM OPINION AND ORDER RESOLVING PSR OBJECTION AND SETTING DEFENDANT'S GUIDELINES SENTENCING RANGE

**THIS MATTER** is before the Court on the United States' Objection to the Presentence Investigation Report ("PSR") (**Doc. 58**) and Defendant's Response to the Government's Objections to the PSR (**Doc. 62**). For the reasons discussed in this Memorandum Opinion and Order, the Court finds the United States' objections to the first PSR justified. The Court agrees that the four-level reduction under § 2P1.1(b)(3) does not apply because Defendant Lujan "committed [a] federal, state, or local offense punishable by a term of imprisonment of one year or more" while escaped from the Diersen Residential Reentry Center. The Court concludes that under the Sentencing Guidelines Defendant's base offense level is 13 and that Defendant is entitled to a two-level reduction for acceptance of responsibility, which results in a total offense level of 11. The first PSR placed Defendant in criminal history category V, and Defendant did not dispute this placement. Thus, with a total offense level of 11 and criminal history category of V, the Court holds Defendant Lujan's guidelines range is 24 to 30 months of imprisonment.

## BACKGROUND

On September 10, 2020, a grand jury indicted Defendant Paul Lujan on one count of escape, in violation of 18 U.S.C. § 751(a), for escaping from the custody of the Federal Bureau of Prisons ("BOP") by leaving Diersen Residential Reentry Center without permission. *See* **Docs. 1**, **4**. On June 22, 2022, the Defendant pleaded guilty to the Indictment without the benefit of a plea agreement. **Doc. 49**. On September 13, 2022, the first PSR was disclosed. **Doc. 54**. The first PSR calculated Defendant's base offense level as 13. *Id.* ¶ 14. A four-level reduction was applied to his base offense level because, according to the PSR, Defendant had "escaped from the non-secure custody of a community corrections center, community treatment center, 'halfway house,' or similar facility." USSG § 2P1.1(b)(3).

On October 4, 2022, the United States filed objections to the PSR. **Doc. 58**. The United States objected to the four-level reduction under § 2P1.1(b)(3). According to the United States, the reduction should not apply to Defendant because he committed state offenses while escaped from BOP custody. **Doc. 58** at 4. The United States points to the second half of § 2P1.1(b)(3), which places a caveat on the four-level reduction: "*Provided,* however, that this reduction shall not apply if the defendant, while away from the facility, committed any federal, state, or local offense punishable by a term of imprisonment of one year or more." To support its argument, the United States relies on documents evidencing that Defendant was arrested for and charged by the State of New Mexico with Armed Robbery, Assault with Intent to Commit a Violent Felony, Aggravated Assault with a Deadly Weapon, and False Imprisonment based on his conduct while escaped from BOP custody. *See* **Doc. 58, Ex. 2**, **4**. The United States argues that the facts underlying these charges support a finding by a preponderance of the evidence that Defendant "committed" state offenses while escaped, for the purposes of § 2P1.1(b)(3).

Defendant filed a Response to the United States' objections. **Doc. 62**. In his response, Defendant argues the United States cannot establish by a preponderance of the evidence that Defendant Lujan "committed" the alleged state offenses because, according to Defendant, the United States relies on unsworn, uncorroborated allegations. The Defendant also emphasizes that the state criminal charges were dismissed.

Based on the United States' objections and the Defendant's response, a second PSR was filed on October 6, 2022. **Doc. 63**. The second PSR did not include the four-level reduction. In the Addendum to the second PSR, the United States' objection to the four-level reduction was noted and the Probation Officer concluded, "Upon further review, a reduction of four-levels from the base offense level pursuant to USSG § 2P1.1(b)(3) is not applicable in this case due to the defendant committing a state offense while on escape status . . . ." **Doc. 64**.

On October 11, 2022, the Court held a sentencing hearing. *See* **Doc. 68**. At the hearing, Detective Natasha Nieto testified about her investigation into the state offenses Defendant allegedly committed. After Detective Nieto testified, the United States submitted to the Court and Defense counsel Exhibit 1—an audio disk recording of Detective Nieto's interviews with the two alleged victims. The Court admitted Exhibit 1 for the purposes of the sentencing hearing. Defendant renewed his objection to Exhibit 1, contending it is unreliable hearsay. The Court continued Defendant's sentencing hearing in order to review Exhibit 1.

Having now reviewed Exhibit 1 as well as the parties' briefing and the applicable law, the Court concludes the United States has established by a preponderance of the evidence that Defendant committed state offenses while escaped from BOP custody. Thus, the four-level reduction under § 2P1.1(b)(3) was properly excluded from the second PSR.

## DISCUSSION

**I.    The United States proved by a preponderance of the evidence that Defendant committed state offenses while escaped from BOP custody.**

Defendant Lujan pleaded guilty to one count of escape, in violation of 18 U.S.C. § 751(a). Under the Sentencing Guidelines, the base offense level for escape is 13 if a defendant was in "custody or confinement . . . by virtue of an arrest on a charge of felony, or conviction of any offense." USSG § 2P1.1(a)(1). Here, Defendant Lujan was in BOP custody and assigned to Diersen Residential Reentry Center by virtue of a conviction for using and carrying a firearm during and in relation to a crime of violence, in violation of 18 U.S.C. § 924(c). *See* **Doc. 63**, ¶ 6. Thus, the first and second PSRs properly found Defendant's base offense level to be 13. *See* **Docs. 54, 63**. USSG § 2P1.1(b)(3) allows for a four-level reduction to a defendant's base offense level under certain circumstances:

> If the defendant escaped from the non-secure custody of a community corrections center, community treatment center, "halfway house," or similar facility, and subsection (b)(2) is not applicable, decrease the offense level under subsection (a)(1) by 4 levels or the offense level under subsection (a)(2) by 2 levels. *Provided,* however, that this reduction shall not apply if the defendant, while away from the facility, committed any federal, state, or local offense punishable by a term of imprisonment of one year or more.

Here, the parties do not dispute Defendant escaped from a halfway house or similar facility; however, the parties disagree on whether the United States presented sufficient evidence to support a finding that Defendant committed a state offense while escaped from BOP custody, which would mean Defendant is not entitled to the four-level reduction.

The Tenth Circuit has not explicitly addressed whether a defendant can be found to have "committed" a state offense under § 2P1.1(b)(3) when charges were filed against the defendant for his conduct while escaped but the charges were later dismissed. However, in the Ninth and Eleventh Circuits a defendant can be found to have "committed" an offense under § 2P1.1(b)(3)

4

even if the Defendant was never indicted or convicted for such an offense. *See United States v. Charlesworth*, 217 F.3d 1155, 1158 (9th Cir. 2000) ("We further hold that § 2P1.1(b)(3)'s use of the word 'committed' does not require that the defendant have been convicted or indicted of a felony."); *see also United States v. Strachan*, 968 F.2d 1161, 1162-63 (11th Cir. 1992) ("[T]he court can deny the reduction [under § 2P1.1(b)(3)] if a preponderance of the evidence demonstrates that the defendant committed a disqualifying offense, even if there has been no formal conviction."). Guided by the Ninth and Eleventh Circuits, the Court concludes that when determining whether Defendant Lujan "committed" state offenses while escaped from BOP custody, the Court may consider evidence presented by the United States about state offenses Defendant allegedly committed—even if charges were dismissed.

At sentencing, factual findings generally "must be supported by a preponderance of the evidence." *United States v. Robertson*, 946 F.3d 1168, 1171 (10th Cir. 2020). In making factual findings, "reliable hearsay . . . may be used at sentencing to determine the appropriate punishment." *United States v. Beaulieu*, 893 F.2d 1177, 1181 (10th Cir. 1990). The Tenth Circuit has cautioned, however, that "[a]s it pertains to hearsay information, due process requires that the information used have 'some minimal indicium of reliability beyond mere allegation.'" *Id.* (citation omitted).

After reviewing the evidence presented by the United States at the October 11, 2022, sentencing hearing and the recorded statements in Exhibit 1, file # 200826-2002, the Court finds by a preponderance of the evidence that Defendant committed state offenses while escaped from BOP custody; therefore, the four-level reduction does not apply under § 2P1.1(b)(3).

Defendant Lujan escaped from BOP custody on or about July 23, 2020. **Doc. 4**. On August 25, 2020, the United States filed a criminal complaint against Defendant charging him with escape. **Doc. 1**. At the time the complaint was filed, Defendant Lujan's "whereabouts remain[ed]

unknown." *Id.* at 2. In the early morning hours of August 26, 2020, Defendant allegedly committed state offenses against two victims, M.O. and I.R. At the sentencing hearing, Detective Nieto testified about her investigation into these alleged offenses and her interviews with the alleged victims. Detective Nieto interviewed the alleged victims on August 26, 2020. The interviews were audio recorded. This audio recording was submitted to the Court and Defense counsel and admitted as United States' Exhibit 1 at the October 11, 2022, hearing.

Detective Nieto's testimony and the recorded statements of the alleged victims are consistent with one another. Detective Nieto, M.O., and I.R. all independently identified Defendant Paul Lujan as the man who committed the alleged state offenses on August 26, 2020. Each person also referred to the Defendant by both his legal name and his nickname "Chubbs." The Court finds the Detective's testimony and the alleged victims' unsworn statements to be reliable hearsay. Thus, the following description of the events alleged to have taken place on August 26, 2020, is based on Detective Nieto's testimony and the statements of M.O. and I.R.:

Between three-thirty and four in the morning on August 26, 2020, M.O. and I.R. were stopped at an ATM on 4th Street in Albuquerque, New Mexico, to get money for the casino when a car pulled up and Defendant Paul Lujan—also known as, "Chubbs"—got out of the vehicle. M.O. recognized Defendant as her cousin and greeted him. Four other people were with Defendant in the car. One of the women who was with Defendant needed to use the restroom, so Defendant and his four companions followed M.O. and I.R. back to M.O.'s nearby residence.

Defendant and his four companions entered M.O.'s residence with M.O.'s permission. The two women went to the restroom, while Defendant and two men stayed in M.O.'s living room with M.O. and I.R. Not long after, Defendant pulled out a gun and pointed it at M.O. Defendant instructed M.O. and I.R. to empty out their pockets. Defendant then told I.R. to unplug M.O.'s

television and carry it outside to M.O.'s car. After placing the television in the car, I.R. returned to the living room. Once I.R. was back in the living room, Defendant ordered M.O. and I.R. to lie on their stomachs and put their hands behind their backs. Defendant and another man tied I.R.'s and M.O.'s hands. Defendant then told M.O. and I.R. that if he saw any shadows following him, he would "blast" them. Defendant took M.O.'s car, wallet, car keys, television, shoes, watches, dartboard, and cell phone; Defendant also took I.R.'s two cell phones and his wallet.

Based on these alleged facts, the State of New Mexico charged Defendant Lujan with two counts of Armed Robbery; two counts of Assault with Intent to Commit a Violent Felony; two counts of Aggravated Assault with a Deadly Weapon; and one count of False Imprisonment. **Doc. 58, Ex. 4**. In its objections to the PSR, the United States urges this Court to find Defendant "committed" the above listed state offenses for the purposes of § 2P1.1(b)(3). The United States' argument is well taken. The Court finds the sworn testimony of Detective Nieto and the unsworn statements of M.O. and I.R. support a finding—by a preponderance of the evidence—that Defendant committed the state offenses he was charged with by the State. Accordingly, the Court declines to apply the four-level reduction to Defendant's base offense level under § 2P1.1(b)(3).

**II.   Defendant Lujan's guidelines sentencing range**

As discussed, Defendant's base offense level for escape is 13 under the Sentencing Guidelines. *See* USSG § 2P1.1(a)(1). Defendant is entitled to a two-level reduction for acceptance of responsibility. *Id.* § 3E1.1(a). Thus, Defendant's total offense level is 11. The first and second PSRs placed Defendant in criminal history category V. Defendant did not object to this placement, and the Court agrees Defendant is in criminal history category V based on the criminal convictions discussed in the second PSR, (**Doc. 63 at 6-11**), and because the Defendant "committed the instant offense while under any criminal justice sentence," USSG § 4A1.1(d). Thus, with a total offense

level of 11 and criminal history category of V, Defendant's guidelines range is 24 to 30 months of imprisonment.

## CONCLUSION

The United States proved by a preponderance of the evidence that under § 2P1.1(b)(3) Defendant Lujan "committed" state offenses while escaped from BOP custody; thus, Defendant is not entitled to a four-level reduction to his base offense level. The Court further concludes Defendant's guidelines range is 24 to 30 months of imprisonment based on his total offense level of 11 and criminal history category of V. The Court will set another sentencing hearing to hear arguments on United States' Motion for Upward Departure or Variance (**Doc. 59**) and to sentence the Defendant.

**IT IS SO ORDERED.**

_____
WILLIAM P. JOHNSON
CHIEF UNITED STATES DISTRICT JUDGE